UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V.                       ) | NO. 09-CR-10017-GAO |
| ) | |
| TAREK MEHANNA            ) | |

## DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO LIMIT DEFENSE COMMENT AND INQUIRY REGARDING INADMISSIBLE SUBJECT MATTER (#279)

The defendant, Tarek Mehanna, hereby opposes the government's above-stated motion in limine (Docket #279). This motion should be denied in its entirety.

**A.    Government Charging Decisions**

The defense must be permitted to raise the government's charging decisions when questioning government witnesses. These questions are critical to the defense, as they expose witness bias in a case that rests entirely on witness credibility.

The government has alleged a giant conspiracy of 35 co-conspirators and is unfairly asking this court to limit the defense's ability to rebut this global "network" theory. The government has listed as unindicted co-conspirators people who have absolutely no relationship with the defendant, such as Osama Bin Ladin. The prosecutorial theory is conspiracy by mere association. Exploring biases, inducements, and reasons why the

government lets some known, self-proclaimed terrorists roam free is critical to exploring witness credibility. We ask this court to allow a defense that appropriately responds to the scope of conspiracy that the government itself set forth.

The jury should hear questioning about who is pointing the finger at the defendant and what each individual has to gain by testifying. Allowing the jury to evaluate witness bias and motivations is allowing them a fair appraisal of the evidence. Excluding that information, as the government suggests, would be misleading them.

**B.    Government Investigative Steps or Actions**

The government, citing United States v. McVeigh, next argues that "[a] defendant may not put the government on trial by arguing that there was something more the government could have done to investigate the case when, as here, the defendant has not made any showing of a connection between an allegedly shoddy or slanted investigation, and the evidence to be introduced at trial." Gov. Mot. in Limine 3-4, Oct. 3, 2011. Despite the government's assertion that the defense has not shown a nexus between the shoddy investigation and the evidence to be used at trial, and ignoring the fact that the defense is not required to disclose to the government the arguments it intends to introduce at trial, the government also acknowledges in its motion two areas where a connection was made between the

slanted investigation and trial evidence: the lack of training camps in Yemen at the time Mr. Mehanna traveled there, and the government's plea deals with other individuals.

"Admittedly, the quality or bias of a criminal investigation occasionally may affect the reliability of particular evidence in a trial, and hence, the facts surrounding the government's investigation may become relevant." United States v. McVeigh, 153 F.3d 1166, 1192 (10th Cir. 1998)(citing Lowenfield v. Phelps, 817 F.2d 285, 291-92 (5th Cir. 1987)), cert. denied, 526 U.S. 1007 (1999). The defense submits that this is such a case. In McVeigh, the excluded evidence was not probative, and, had it been introduced, "[t]here was no trial evidence whose reliability would have been undercut." Id. at 1192. Here, on the other hand, the government itself in its motion mentioned two pieces of evidence that would be "undercut" by inquiry into the investigation.

The government's reliance on United States v. Zaccaria is also misplaced. In that case, the defendant argued that the trial court abused its discretion when it barred him from questioning a government agent on the administration, or lack thereof, of polygraph tests to some government witnesses. 240 F.3d 75, 80 (1st Cir. 2001). The First Circuit held that it was proper to exclude this line of questioning, as the matter of whether some of the witnesses were given a polygraph was too

3

remote from the issues in the case. Id. at 81. The court noted that the defendant's theory that failure to administer polygraphs to government witnesses indicated that the government was playing "fast and loose"

> requires much too attenuated a chain of inference. For example, the fact that polygraph tests ultimately were not administered could be attributable to any number of reasons (e.g., administrative oversight, lack of time, lack of resources, the personal proclivities of a specific agent, knowledge that the test results would be inadmissible at trial, and so on and so forth).

Id. Here, however, the proposed evidence is directly related to facts at issue. Using the example in the government's motion about the existence of training camps in Yemen, evidence that the government was unable to find such camps is admissible (unlike the results of a polygraph test), and suggests that Mr. Mehanna did not travel to Yemen for the purpose of attending such a camp.

The government also couches its objection in terms of potential confusion of the jury. However, as the Ninth Circuit commented in United States v. Sager, "[t]o tell the jury that it may assess the product of an investigation, but that it may not analyze the quality of the investigation that produced the product, illogically removes from the jury potentially relevant information." 227 F.3d 1138, 1145 (9th Cir. 2000)(holding that the judge's telling the jury not to "grade" the investigation

4

was plain error and an abuse of discretion; it was also error to "curtail[] as irrelevant further examination into the investigatory details").

It is unclear from the government's motion in limine what potential evidence it seeks to exclude. If the government is asking the Court to exclude all evidence related to the thoroughness of the investigation, the defendant strenuously objects. Courts have noticed and protected the defendant's right to introduce evidence questioning the quality of the government's investigation. "A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant." Bowen v. Maynard, 799 F.2d 593, 613 (10th Cir. 1986). The Supreme Court has also discussed with approval the defense tactic of attacking police investigations as shoddy. Kyles v. Whitley, 514 U.S. 419, 442 n. 13 (1995).

The defense is permitted to comment on missing evidence that one would expect an investigation to reveal as well. "In every criminal case, the mosaic of evidence that comprises the record before a jury includes both the evidence and the lack of evidence on material matters. Indeed, it is the absence of evidence upon such matters that may provide the reasonable doubt that moves a jury to acquit." United States v. Poindexter, 942 F.2d 354, 360 (6th Cir. 1991)(holding that it was reversible

error for the court not to allow one defendant to argue that presence of fingerprint powder on a container, without the introduction of fingerprint evidence, presented reasonable doubt). See also United States v. Thompson, 37 F.3d 450, 454 (9th Cir. 1994)("Because evidence comes in various forms, some stronger and some weaker, a defendant is entitled to argue to the jury that the government's failure to present a particular type of strong evidence against her . . . weakens its case."). Here, for example, the existence of terrorist training camps in Yemen in 2004 is a material issue, given the government's accusation that Mr. Mehanna traveled to Yemen at that time for the purpose of attending such a camp. The government's inability to locate such a camp in operation at that time period after an investigation is probative, not prejudicial or confusing, and may provide reasonable doubt.

For the above reasons, the defense respectfully asks the Court to deny the government's motion to exclude evidence on government investigative steps or actions. As courts often find this evidence to be highly probative and to assist, not confuse, the jury, a blanket ban on introduction of this type of evidence is inappropriate.

**C.   The Government's Motivation for Investigating or Prosecuting the Case**

The government claims, without citing case law on point,

that all references to the government's motivation for investigating or prosecuting the case must be excluded. United States v. Trueber concerned a Terry stop; the government cites it to support the proposition that "[i]t is settled law that inquiries regarding the subjective intentions or motivations of government agents are irrelevant to determining the factual guilt or innocence of a defendant." Gov. Mot. in Limine 5. Terry, and thus Trueber, concern relatively nonintrusive stop-and-frisk type searches intended to protect officer safety, and which are based only on reasonable suspicion. Terry v. Ohio, 392 US 1, 30 (1968); United States v. Trueber, 238 F.3d 79, 92 (1st Cir. 2001). Surely the government does not intend to assert that the standard for such a limited intrusion would extend to a defendant's rights at trial.

The government cites United States v. Goulding for the same argument as Trueber was intended to support, that the government agents' intentions are irrelevant to determining a defendant's guilt. As the government notes, the Seventh Circuit remarked in Goulding that the trial court did not err when it did not "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant." 26 F.3d 656, 667 (7th Cir. 1994). What the government failed to note in its motion is the district court's ruling, affirmed by the Seventh Circuit, that the defendant had failed to show the

7

prosecution was based on a discriminatory intent or had a discriminatory effect. Id. at 662. The agents at issue whose intentions the court stated were irrelevant "were not involved in the decisions to begin a criminal investigation or to prosecute." Id. Lastly, the Seventh Circuit noted "Goulding was not—despite his claims—prevented from cross-examining any witnesses regarding an animus against him." Id. at 667. The defense submits that Mr. Mehanna's case is distinguishable from Goulding. Here, the FBI approached Mr. Mehanna and threatened to bring charges against him if he refused to act as an informant. It was those same FBI agents who were involved in the decision to bring a criminal investigation, and represented to Mr. Mehanna that they were involved in the decision to prosecute. Finally, even if the Court finds that the agents' intentions were irrelevant, the defense asks for what the district court in Goulding provided – the opportunity to cross-examine government witnesses regarding animus.

As demonstrated in Part B, supra, the caliber of the investigation and the methods agents used to gather evidence at times bear directly on how the jury will weigh that evidence. In the same vein, the motivation behind the investigation may influence how it was performed. The D.C. District Court has suggested that the motivations of government agents are relevant and are fair grounds for questioning on cross-examination.

United States v. Quinn, 537 F. Supp. 2d 99, 114 (D.D.C. 2008)("[the defendant] could probe [Special Agent] Douglas' investment in the case and his motivation to have a successful prosecution to cover what could be perceived as crucial mistakes made during the beginning of the process").

As the government's methods of investigation and their reasons for pursuing such an investigation against Mr. Mehanna are relevant and probative and will not confuse the jury, the defense respectfully asks the Court to deny the government's motion to exclude evidence on the government's motivation for investigating and prosecuting this case.

**D.    Consequences of Conviction**

The defense is aware of the law.

**E.    Commentary Regarding Discovery Before the Jury**

The defense is aware of the law.

**F.    Use of Agent Reports and Summaries of Intercepted Communications During Cross-Examination of a Witness**

The defense is aware of the law.

**G.    Statements Made by the Defendant**

The government argues that the defendant should be precluded from seeking admission of all of his own statements because they are inadmissible hearsay. This court should deny the government's blanket request. Prior to the point at which the defendant seeks to admit a particular statement, it is

impossible to make an evidentiary ruling involving hearsay.

For example, the defendant may seek to admit a conversation he had with a friend about an ancient religious text. He would seek to admit this conversation not to prove the truth of the text he discussed, but to show that he discussed many topics other than jihad. This conversation would not be offered for the truth of the matter asserted, and so would not be hearsay. See FRE 801(c), 802.

The defendant may seek to admit a statement he made about a recent event in Iraq or Afghanistan. Such a statement may be admitted as a present sense impression. See FRE 803(1). If the defendant expressed agitation about the event, his statement could be admissible as an excited utterance. See FRE 803(2).

The defendant may seek to admit his statement, "Why is the FBI after me? What the heck did I do?," may be admissible as a mental condition, showing his innocent state of mind. See FRE 803(3).

A blanket prohibition on the defendant seeking to admit all of his statements would deprive the defendant of his right to admit relevant, probative evidence that does not violate any Federal Rule of Evidence. It would deprive the defendant of his constitutional right to defend himself.

## H. Statements made by Co-Conspirators

The government argues that the defendant should be

precluded from seeking to admit statements made by his alleged co-conspirators. For the reasons stated in section G, above, this Court should deny the government's blanket request.

The government appears to acknowledge the defendant's argument, stating that "[c]o-conspirator statements are inadmissible if offered by the defendant, unless not offered for the truth of the matter asserted, or falling under a recognized exception to Rule 802." (Gov't Motion 11). There is a panoply of bases within the Federal Rules of Evidence that would allow the defendant to seek to admit statements of his alleged co-conspirators. It is impossible at this point to determine whether a particular statement will be admissible or inadmissible at trial.

This task is doubly complex because the government has yet to prove that a conspiracy existed. The government must do so with evidence other than the statement to be proffered. Many of the defendant's "co-conspirators" are connected to the defendant solely through online, non-incriminating speech. It is unclear that the government will be able to meet its burden of proof for admission of these statements. See United States v. Piper, 298 F.3d 47, 52 (1st Cir. 2002).

The defense adds that the government must be required to make an offer of proof of this court regarding how each and every co-conspirator actually conspired with Tarek Mehanna to do

anything. Without such an offer of proof, statements by any alleged co-conspirator is entirely inadmissible. The government cannot slap a "co-conspirator" label on any person it chooses to skirt hearsay rules.

It is impossible to determine which statements are admissible, and for what purposes, before the moment at trial at which the defendant seeks to admit them.

## I. Testimony or Commentary about the Defendant's Lawful Activities or Other Improper Character Evidence

The defense is aware of the law on character evidence. Mindful of the appropriate rules, the defense must be able to introduce expert testimony on the defendant's writings and beliefs. The government makes those writings and beliefs central to their prosecution. This expert testimony is not the sort of "character evidence" envisioned by the Federal Rules of Evidence 404 and 405, but it is evidence of the defendant's intent.

The government's case is based on subjective predictions of whether videos the defendant watched, things he wrote, places he went, scholars he quoted, and things he talked about meant he intended to commit terrorism crimes. The defense must be able to rebut through expert testimony what those actions actually meant and why the government's subjective predictions are dangerously faulty. Expert testimony on his writings and beliefs are central to the defense case and to his free speech defense.

**Conclusion**

Therefore, this court should deny the government's motion (#279) in its entirety because nothing cited is "inadmissible subject matter."

TAREK MEHANNA
By his attorneys,

CARNEY & BASSIL

/s/J. W. Carney, Jr.
J. W. Carney, Jr.
B.B.O. # 074760

/s/Janice Bassil
Janice Bassil
B.B.O. # 033100

Sejal H. Patel
B.B.O. # 662259
Steven R. Morrison
B.B.O. # 669533
John E. Oh
B.B.O. # 675916
Carney & Bassil
20 Park Plaza, Suite 1405
Boston, MA 02116
617-338-5566

Dated: October 11, 2011

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

/s/J. W. Carney, Jr.
J. W. Carney, Jr.

13