UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
                                  )
        v.                        )          Criminal No. 09-10017-GAO
                                  )
                                  )
TAREK MEHANNA                     )

**GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO GOVERNMENT
MOTION IN LIMINE TO LIMIT DEFENSE COMMENT REGARDING PROPOSED
DEFENSE EXPERT'S TESTIMONY DURING OPENING STATEMENTS (#277)**

The United States of America, by and through United States Attorney Carmen M. Ortiz,

and Assistant United States Attorneys ("AUSA") Jeffrey Auerhahn and Aloke S. Chakravarty, for

the District of Massachusetts, and Jeffrey D. Groharing, Trial Attorney, Counterterrorism Section,

National Security Division, United States Department of Justice, hereby moves the Court to

restrict the defense from commenting during opening statements regarding the testimony of Dr.

Marc Sageman, Dr. Mohammad Fadel, Dr. Brian Glyn Williams, Dr. Gregory Johnson, Dr.

Ebrahim Moosa, Dr. Andrew March, and Dr. Steven Durlauf until the defense has complied with

the Federal Rules of Procedure and the Judge has made a determination regarding the admissibility

of their testimony.   For the reasons stated herein and supported by the allegations in the record,

the government respectfully requests that the Judge direct the defense to provide detailed

disclosures for all proposed expert testimony, schedule a hearing to determine whether any of the

defense experts will be permitted to testify, and direct the defense to refrain from making any

comments during opening statements regarding any of the experts' testimony until a determination

has been made regarding the relevance, scope and admissibility of their testimony.   Absent such a

finding, comments made by the defense during opening statements run the risk of improperly

1

influencing the jury.   The government respectfully requests the opportunity to supplement this filing after the defense has provided appropriate disclosures required by the Federal Rules of Criminal Procedure.

## **INTRODUCTION**

On September 29, 2011, the defense provided the government with its expert disclosures. According to the disclosures, the defense intends to present testimony from seven experts.   The defense did not provide any export reports and indicated that the subject matter of the expert's testimony was "evolving."   *See* Defense disclosure at 1.   During the October 3, 2011 hearing, the defense indicated that no additional information regarding the experts' testimony would be forthcoming.   On October 3, 2011, the government filed a motion to limit defense comment during opening statement regarding the defense experts (D277), noting that the defense disclosures were inadequate. The defense claims their September 29, 2011 disclosure explains exactly which witnesses speak to which portions of the government expert reports.   With all due respect to counsel, it is difficult to square the defense comments in D290 with the Federal Rules of Criminal Procedure and Federal Rules of Evidence.   Notwithstanding defense counsel's assertions on the record during the October 3, 2011 hearing, and its response to D277, the disclosures are woefully deficient and do not provide an appropriate notice so that a meaningful discussion can take place to determine whether any of the experts possess the specifically tailored scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue or whether their opinions and the bases of those opinions are admissible.   *See* FRCP 16.    In the defense response, they merely state "[t]he defense experts point by point rebut the government experts" and "[t]he letter disclosure dated September 29, 2011 explains exactly which witnesses speak to which portions of the government expert reports."   This response, like the

2

disclosures, completely misses the mark.

To the extent that the Defense has provided a summary of the expert's proposed testimony or the government is able to glean the proposed testimony from the filing or resumes of the experts, the Government believes that for all of the experts identified below, the testimony proferred is not admissible, either because the expert cannot withstand scrutiny under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny; because the testimony is simply not relevant under Federal Rule of Evidence 401; or because any relevance of the testimony is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury under FRE 403.   Furthermore, in some instances the proffered opinions would violate FRE 704.

## **DISCUSSION**

The defense should not be allowed to comment on its proposed experts' testimony until a finding has been made regarding admissibility.   Based on the disclosure provided by the defense, the proffered testimony of the defense experts is inadmissible for a number of reasons.   An analysis regarding each expert's proffered testimony follows.

I.      Dr. Marc Sageman

The defense disclosure for Dr. Sageman states:

> We expect that Dr. Sageman will testify that Tarek Mehanna [was] an individual involved in a social movement who protested against perceived injustice.  Dr. Sageman will testify based on his studies using correct scientific methodology, that the concept of Al-Qaeda as a decentralized organization is incorrect.  Dr. Sageman will speak about the importance of applying social science to studying terrorism and individual terrorists rather than making inaccurate conclusions unsupported by data.  He will refute the government expert testimony and conclusions characterizing Mr. Mehanna as a radicalized homegrown terrorist.  He will refute the government's experts' views of the manner in which a person, including the defendant, "becomes radicalized."

As an initial matter, the notice as it relates to Dr. Sageman is defective.  FRCP 16 states that the defendant must give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. That summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  FRCP 16(b)(1)(C).  The notice provided by the defense is long on Dr. Sageman's purported qualifications, opaque on his opinions, and devoid of any meaningful discussion regarding the bases or reasons for his opinions.

A.  Admissibility of Dr. Sageman's opinions under Federal Rules of Evidence 702

The Federal Rules of Evidence permit an expert witness to testify "in the form of an opinion" if  "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  The district court's gatekeeping responsibility requires it "to conduct an exacting analysis of the <u>foundations</u> of expert opinions to ensure they meet the standards for admissibility under Rule 702," <u>United Stats v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (emphasis in original) (internal quotation marks omitted), and the burden of laying that foundation falls on the party offering the expert, <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1306 (11th Cir. 1999).

It is unclear from the defense disclosure what Dr. Sageman's opinions that pertain to this case are and how any opinions are based on *scientific, technical, or other specialized knowledge*. To the extent that Dr. Sageman's opinions are discernable from the disclosures, the defendant has failed to demonstrate that Dr.Sageman's opinions are based upon sufficient relevant facts or data as required by Rule 702.  The defense disclosure merely states that "[he] will refute the government expert testimony and conclusions characterizing Mr. Mehanna as a radicalized

4

homegrown terrorist" and he "will refute the government's experts' views of the manner in which a person, including the defendant, 'becomes radicalized.'" There is no attempt to show what data Dr. Sageman will rely upon to do this, or any explanation of how he has applied the scientific principles and methods to this case.

B.  Admissibility of Dr. Sageman's Opinions Based on Relevance

Assuming arguendo that the defense can overcome their burden of establishing the Dr. Sageman's testimony meets the standards for admissibility under Rule 702, the testimony should be excluded for various other reasons.   Each of Dr. Sageman's opinions will be addressed in turn:

1.      Dr. Sageman will testify that Tarek Mehanna [was] an individual involved in a social movement who protested against perceived injustice.

Neither Dr. Sageman, nor any expert witness, should be permitted to offer such an opinion.   Such an opinion is either inadmissible character evidence (assuming Dr. Sageman is testifying that because of analysis of some of Mehanna's opinions and activities, in Dr. Sageman's expert opinion Mehanna is part of a social movement) or because he would be offering an opinion on an ultimate issue in violation of FRE 704 (if Dr. Sageman is opining that Mehanna's is properly characterized as an individual involved in a social movement… and not a violation of any federal statute).

If Dr. Sageman's opinion is the former, it is merely testimony regarding lawful activity of the defendant.   Other than testimony from character witnesses fitting within the narrow confines of Federal Rules of Evidences Rule 404(a)(1) and 405(a), evidence offered by defendant of his lawfulness or good conduct is not admissible. "A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." United

States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990).   Evidence of the defendant's other lawful behavior is irrelevant because lawful acts do not prove an absence of unlawful acts, including those unlawful acts alleged in the indictment.   See, e.g., United States v. Winograd, 656 F.2d 279, 284 (7th Cir. 1981) ("[T]he district judge correctly refused to admit the evidence on this basis because evidence that [the defendant] engaged in certain legal trades is generally irrelevant to the issue of whether he knew of other illegal trades.") (citing United States v. Dobbs, 506 F.2d 445, 447 (5th Cir. 1975)).

If Dr. Sageman is opining (or suggesting) that the defendant's conduct is not criminal, but merely reflects he is involved in social movement protesting against perceived injustice, it is inappropriate under Rule 704.   If permitted to offer such opinion, Dr. Sageman would essentially be saying the defendant is not guilty of the charges.   This is an issue that must be decided by the jury, and permitting experts to provide opinions (either directly or indirectly) about whether or not they viewed the defendant's conduct as unlawful cannot be permitted.

To the extent the fact that the defendant was involved in a social movement protesting against perceived injustice is relevant and admissible, a point the government does not concede, the defendant would be the proper person to provide this testimony. Allowing Dr. Sageman to provide this testimony would be smuggling inadmissible hearsay (the views of the defendant)   into evidence.

> 2.    Dr. Sageman will testify, based on his studies using correct scientific methodology, that the concept of Al-Qaeda as a decentralized organization is incorrect.

Putting aside the fact that the defense has not provided what studies upon which Dr. Sageman would be relying, the defense has not articulated the significance of al Qaeda being a

6

centralized or decentralized organization.   In the event that Dr. Sageman can overcome the 702 challenge, this testimony *might* possibly be relevant in this case, however the defense has not indicated *how* it is relevant, nor the basis for those conclusions.   Absent such a showing, the defense should not be permitted to call Dr. Sageman to elicit this testimony.

3.   Dr. Sageman will speak about the importance of applying social science to studying terrorism and individual terrorists rather than making inaccurate conclusions unsupported by data.

Dr. Sageman's testimony might be relevant in this regard, however, as mentioned above, the defense disclosure does not: (1) explain how Dr. Sageman has applied social science to studying terrorism and individual terrorists; or (2) indicate what conclusions (presumably those made by the government experts) he believes are inaccurate or unsupported by data.   This testimony appears to suggest that a jury is not able to discern the facts of this case, which involves terrorism-related charges, unless they too apply social science.   There is a high likelihood that such testimony can very easily spill into confusing the jury into thinking that they are incapable of finding the facts necessary to convict, the opposite of an expert's role which is to assist the jury find facts.

4.   He will refute the government expert testimony and conclusions characterizing Mr. Mehanna as a radicalized homegrown terrorist.  He will refute the government's experts' views of the manner in which a person, including the defendant   "becomes radicalized."

The defense has only indicated that Dr. Sageman will refute the government expert testimony, and there are no explanations of what Dr. Sageman's conclusions are, much less what

information he is relying upon to form those conclusions. Absent more, it is difficult to assess whether Dr. Sageman's testimony is permissible under FRE 702, or other applicable rules of evidence.    In order to accurately evaluate his testimony, the defense must be directed to comply with FRCP 16 and provide an adequate summary of his testimony.     In the absence of a summary and determination of admissibility by the Jude, the defense should be prohibited from commenting on his proposed testimony.

      II.      Dr. Mohammed Fadel

FRCP 16 states that the defendant must give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial.    That summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."    FRCP 16b)(1)(C).    As with other witnesses, the defense summary of the Dr. Fadel's opinions is often vague, and in many cases the defense provides no bases or reasons for certain opinions.    Likewise, little explanation is provided to explain how Dr. Fadel's testimony is relevant.    The defense disclosure indicates that Dr. Fadel would testify about several different topics.    For ease of discussion, the subject matter of Dr. Fadel's testimony can be separated into five topics: (1) History of Islam, significance of certain terms and opinions on various Islamic scholars; (2) History of modern jihad and al-Qaeda; (3) Various issues related to Islam and the role of discourse and debate in Islam; (4) Opinions on the defendant's writings (5) Opinions on government experts' testimony.    The admissibility of each will be discussed in turn:

      (1) <u>History of Islam, Significance of Certain Terms, and Opinions on Various Scholars</u>

The defense disclosure states "Dr. Fadel will discuss the following: history of Islam, the

jurisprudence of Islam and how it applies to the concepts of Salafism, Wahaabism, Jihad, Sha'ria law, fatwa, martyrdom, the harming of innocents and suicide missions."

Testimony on the history of Islam has no tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.    Although the defendant's conduct was inspired by his religious views and his interpretations of Islam, he has been charged as a result of his conduct and not his views, and testimony regarding the history of Islam would not be helpful to the jury.    Whether the defendant actions were consistent or inconsistent with the history of Islam is not relevant.   What is relevant is whether the defendant's actions amount to violations of the law.

Likewise, the applicability of the correct jurisprudence of Islam to the concepts of salafism, Wahaabism, Jihad, Sha'ria law, fatwa, martyrdom, the harming of innocents, and suicide missions is wholly irrelevant to any matter at issue in this case.   Even if each of these terms has some relevance to the defendant's state of mind because of his actions or statements, expert testimony about these concepts would have very little probative value and is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.

Similarly, the defense disclosure states "[Dr. Fadel] will discuss various scholars incorrectly characterized by the government as "pro-jihadi" including , but not limited to, Abdullah Azzam, Abd al-Aziz ibn Abd Allad ibn Baaz, Ibn Taymiyya, Muhammad Nasiruddin Al-Albani, Muqbil bin Haadi al-Waadi'ee, Sayyid Qutb, and Abu Muhammad Asem al-Maqdisi."

The government does not intend to present any evidence that characterizes a particular scholar.   The government may present evidence of the defendant's writings that discuss his views on a particular scholar.   Whether or not the defendant's views coincide with Dr. Fadel or any

9

other scholar, or whether the defendant's views are Islamically acceptable is irrelevant.   What is relevant is the defendant's state of mind and his own conduct, facts which no scholar can divine based on a recitation of the landscape of religious belief.   It would not be helpful for the jury to hear testimony regarding an expert's views on particular Islamic scholars.

### (2) Opinions on the defendant's writings

The defense disclosure states that "[Dr. Fadel] will explain to the jury the defendant's writing and translation of these scholars" (referring to the scholars discussed in (1) above); "[h]e will explain to the jury the context of the defendant's comments concerning such figures as Osama Bin Laden, Abu Musab al-Zarqawi and Ayman al-Zawihiri;" and "Dr. Fadel will provide the jury with an understanding of many of the defendant's writings and translations and an understanding of their correct context within the history and law of Islam."

The Court should not permit Dr. Fadel to explain or provide context to the defendant's writings as this would essentially allow Dr. Fadel to testify in place of the defendant about the defendant's state of mind when the defendant performed certain acts.   It is not permissible to allow Dr. Fadel to testify regarding what the defendant thought or what his intent was when the defendant spoke or completed any particular task.   Moreover, such an opinion would clearly violate Rule 704.   It will be up to the Jury to determine what the defendant's intent was when he committed certain acts.   To the extent that it is appropriate for anyone to provide context to the defendant's writings, it should be the defendant.

### (3) History of modern jihad and al-Qaeda

The defense disclosure states "[h]e will discuss the history of modern jihad in the context of the Soviet/Afghan war, the U.S. role in it, Bin Laden, and the subsequent history of Al-Qaeda."

Although the defense declaration indicates that Dr. Fadel is an Islamic legal scholar and expert in Islamic history and religion, there is no indication that he is an expert on "the Soviet/Afghan war, the U.S. role in it, Bin Laden, or the subsequent history of Al-Qaeda."

Even if he did have this expertise, it is unclear how much of the proffered testimony would be relevant.   The defendant is charged with providing material support to al Qaeda, and therefore certain information related to the organization and its former leader's history is appropriate. However, it does not follow that the defendant should be permitted to present evidence of the United States' involvement in the Soviet/Afghan war.   Testimony regarding U.S. policies would have no tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than would be without the evidence. Moreover, the term "history of modern jihad" is vague.   How al Qaeda has used the term Jihad could be relevant, but Dr. Fadel's views on the history of modern jihad don't seem to be relevant to any fact in consequence in this case.

(4) <u>Various issues related to Islam and the role of discourse and debate in Islam</u>

The defense disclosure states "[Dr. Fadel] will also testify to the issues about being a Muslim today, and the role of discourse and debate in Islam."

The defense disclosure does not indicate what "the issues about being a Muslim today" are. Furthermore, the disclosure does not attempt to explain how testimony regarding any particular issue facing Muslims today would make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence. Without more, it is impossible to analyze whether Dr. Fadel's testimony is admissible under FRE 702, or whether the testimony would assist the trier of fact to understand the evidence or determine a fact in issue.

Similarly, Dr. Fadel's views on "the role of discourse and debate in Islam" are not relevant. The defendant is not charged with engaging in a debate.   What the role of discourse and debate is in Islam is completely irrelevant to the charges in this case.   If the defendant wants to explain certain actions he took or statements that he made and explain their particular meaning he can do so, but it would not be helpful for the trier of fact to hear what role discourse and debate plays in Islam.

(5) Opinions on government experts' testimony

The defense disclosure states "[h]e will discuss the evidence presented by the government experts and refute the government expert testimony."   According to FRCP 16, the summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."   FRCP 16b)(1)(C).        Simply stating that a defense expert will refute the government expert's testimony with no more explanation is insufficient when providing notice under FRCP 16.   For example, stating the opposite of the government's expert would lead to often absurd results.   The disclosure fails to indicate what testimony Dr. Fadel would refute and likewise does not provide any basis for his opinions.

III.    Dr. Brian Glyn Williams

The defense disclosure states:

> Dr. Williams will testify about the video evidence and mujahids. He will present expert testimony on so-called "jihadi videos" and their success or lack thereof as a recruiting tool.  He will testify about the Expedition of Umar Hadid, Russian Hell and the State of the Ummah.   He will refute the government expert testimony and conclusions about this evidence.

The summary provided by the defense is deficient under FRCP 16.   As mentioned above, a rule

16 disclosure "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."   FRCP 16b)(1)(C).   Like the disclosures for the other defense experts, the government is left guessing as to what Dr. Williams' testimony might be and there is no attempt by the defense to explain the basis for any of Dr. Williams' opinions. The disclosure provides only a generalized description of his testimony and does not attempt to explain the relevance of the testimony or explain how his testimony would assist the trier of fact to understand the evidence or to determine a fact in issue.

The closest the defense comes to explaining how they believe Dr. Williams testimony would be relevant is their mention of the success or lack of success of jihadi videos as a recruiting tool.   There is no explanation of how Dr. Williams has come to an opinion on the success of jihadi videos (or even whether jihadi videos are successful as a recruiting tool or not).   There is also no explanation how this testimony would help the trier of fact determine any particular issue.   The jury does not need to determine whether or not the defendant was successful in his attempts to recruit others to perform violent jihad.   What is relevant is what the defendant's intent was when he tried to take up arms and he provided translations for certain videos and disseminated materials on the internet.   Dr. Williams cannot provide any testimony regarding the defendant's state of mind and whether or not a particular video (or videos in general) are successful in recruiting others to conduct violent jihad is not relevant.

IV.    Gregory Johnson

The defense disclosure states:

> Johnson will testify about the Al-Qaeda presence in Yemen beginning with the end of the Soviet/Afghanistan war, the return of mujihadeen to Yemen, and their role in Yemeni politics and tribal society.   He will provide the jury with an understanding of Yemen

13

> history and society.   He will explain the three phases of the history of Al-Qaeda in Yemen, beginning with the return of the Mujahadeen from Afghanistan, the bombing of the USS Cole, the government reaction and in particular the role of President Saleh and the United States in removing Al-Qaeda after September 11[th]. He will discuss the absence of Al-Qaeda after September 11[th] and its resurgence after 2005 and the current state of affairs in Yemen. He will refute the government expert's testimony and conclusions about that trip and testify that Yemen was not a jihadi stronghold in 2004.

None of Mr. Johnson's proffered testimony is relevant.   The government is not calling an expert to testify regarding the purpose of the defendant's travel to Yemen or to establish that Yemen was a jihadi stronghold in 2004.   Testimony regarding the history of Yemen, and al Qaeda's presence in Yemen (or lack thereof) will not assist the trier of fact to understand the evidence or determine a fact in issue.

The evidence offered at trial related to Yemen will come from a witness who the defendant and his co-conspirators contacted prior to their travel; one of the defendant's co-conspirators, who will testify why he, the defendant, and Mr. Abousamra wanted to travel to Yemen, and then Iraq; and chats, emails, and other materials written by the defendant which demonstrate his intent.

Whatever minimal relevance Dr. Johnson's testimony might have would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.   It seems that the inference that the defense is trying to create is that since there were not camps and/or terrorist facilitators in Yemen in 2004 when the defendant traveled there, it must follow that the defendant did not go there to find a camp or terrorist facilitator.   The link the defense fails to make, and cannot make, is that the defendant had the same knowledge as Dr. Johnson did in 2004. There is no evidence to suggest that is the case and the defendant's own intercepted communications and the testimony of one of his fellow travelers reflect quite the opposite.

14

Permitting this testimony and permitting the defense to argue the defendant could not have been successful in his conspiracy because of the lack of training camps and facilitators at the time would imply the government must prove the existence of such camps or facilitators.    Factual impossibility is not a defense to any of the Yemen related charges, and testimony in furtherance of the same is either a call for jury nullification or other confusion.    The government is not required to prove that there were terrorist camps or terrorist facilitators in Yemen when the defendant traveled there and the testimony should be excluded as irrelevant.

V.    Dr. Ebrahim Moosa

The defense disclosure states:

> Dr. Moosa will testify about how September 11 and its aftermath affected young American Muslims.  He will identify a common thread of confused citizenship among young American Muslims and their efforts post-9/11 to educate themselves about their religion and their Islamic identities.   He will also talk about how this process of education was neither homegrown terrorism nor radicalization. Dr. Mossa will also explain the religious origins of Islam and the correct religious meaning of jihad, kuffar, taqfir, fatwa and other terms in this case.  He will discuss how those religious terms have been misunderstood in the American media.
> He will also speak about historic and contemporary American political and military involvement in the Middle East and how this has always been a source of consternation among Muslims. Further, he will discuss how the freedom of speech is American Muslims' lawful expression of disagreement with U.S. foreign policy.  He will also identify and describe the [sic] some of the many scholars cited to in the expert reports and explain why reading or studying these scholars is in no way part of "radicalization" or a path to violent jihad.   He will refute the government expert testimony and conclusions on all of these points.

The proffered testimony would not assist the trier of fact to understand the evidence or to determine a fact in issue.   How September 11 and its aftermath affected young American Muslims other than Tarek Mehanna (and his co-conspirators) is not relevant to this case.   Whether there is

15

a "common thread of confused citizenship" among young American Muslims and whether some young American Muslims chose to educated themselves about their religion and identity is not relevant to this trial.   Likewise, to the extent that some Muslims undertook a "process of education," not amounting to homegrown terrorism or radicalization it is not relevant to Tarek Mehanna's actions.   Obviously, Dr. Moosa could not testify that the defendant is not radicalized or that his seemingly criminal actions are simply the defendant's effort to educated himself. Those are matters for the jury to decide, and "expert" opinions in this regard are not helpful.

A portion of Dr. Mossa's testimony appears tailored to criticize U.S. foreign policy and to justify the defendant's actions under the rubric of free speech.   Dr. Mossa's opinions on whether or not contemporary American political and military involvement in the Middle Ease has been a source of consternation among Muslims would not assist the trier of fact to understand the evidence or to determine a fact in issue.   The government has previously briefed the propriety of the defense offering evidence of U.S. government activities in this case[1], and we incorporate by reference our arguments contained in previous briefings.

Likewise, Dr. Moosa's opinion that freedom of speech is American Muslims' lawful expression of disagreement with U.S. foreign policy would not assist the trier of fact to understand the evidence in this case or determine any fact in issue.   No one disputes that all Americans have a Constitutional right to free speech.   Whether or not speech in question is lawful disagreement is not an appropriate subject for expert testimony.   To the extent that the defense believes the defendant is being punished for protected 1st Amendment activity, their appropriate recourse is with the Court, not to call an expert to provide his opinion to the jury.

The government will present testimony regarding certain publications by various scholars

---

1 See D280.

that were found on the defendant's computer or were transmitted by the defendant.   To the extent that Dr. Moosa can testify that a particular publication is improperly characterized by a government witness, his views *might* be relevant to put a particular publication in reference. Likewise, to the extent that he can testify that the study of a particular publication is not indicative of radicalization, his views *might* be relevant to the extent they dispute suggestions made by the government.   However whether the witness believes that a document about Jihad, for example, does not necessarily advocate violence, the germane issue is the effect that the document had on the defendant and his co-conspirators, something which the witness is not capable of divining. The defense ambition goes much farther than its support and the vast majority of Dr. Moosa's testimony as described is inadmissible.

VI.     Dr. Andrew March

The defense disclosure states:

> Dr. March will testify about being an American and a Muslim and what obligations Islam places on citizens of the United States.   He will discuss at length Islamic law on the concept of aman or the covenant of security which prohibits a Muslim from attacking the land in which he lives and the defendant's acceptance and commitment to this Islamic law.   He will testify to writings and translations made by the defendant which support this.   He will discuss the writings of certain scholars such as Sayyid Qutb and Ibn Tayymia and put the defendant's reading of them in context for the jury.     He will refute the government expert testimony and conclusions.

Dr. March's testimony will not assist the trier of fact to understand the evidence or to determine a fact in issue.   The jury will be charged with determining whether the defendant's conduct violated various criminal statutes.   Whether or not Islam places obligations on American Muslims is not relevant to any issue the jury will need to decide.

17

The remainder of Dr. March's proffered testimony appears to be tailored to explain what the defendant was thinking at the time he took certain acts.   Testimony of this nature offered by an expert is clearly improper.   If the defense wants to provide an explanation for the defendant's conduct they should have to call the defendant.   Having surrogates testify to explain the defendant's views is not appropriate.   Such evidence would be hearsay, is not the proper subject matter for expert testimony, and in any event, is simply not relevant.   To the extent the testimony has any relevance; the probative value would be very little and is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

VII.    Dr. Steven Durlauf

The defense disclosure states:

> We expect that Dr. Durlauf will identify the flaws in the government experts' methodology, both in their expert reports and in their scholarly work.  He will identify how the government expert conclusions are flawed and wrought with errors because they do not comport with accepted social science methodology.

As an initial matter, the notice as it relates to Dr. Durlauf is defective.   FRCP 16 states that the defendant must give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. That summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."   FRCP 16b)(1)(C).   The only indication of what Dr. Durlauf's opinions are is that he believes the government expert's opinions are flawed.   The disclosure fails to provide any explanation of how the conclusions are flawed or do not comport with accepted social science methodology.

18

The purpose of Dr. Durlauf's testimony appears to be only to identify flaws in the government expert's methodology.   The defense has provided no explanation of what the flaws are or how the government expert's conclusions do not comport with accepted social science methodology.   Without more, the government is unable to assess whether or not Dr. Durlauf's testimony should be admitted into evidence. The Federal Rules of Evidence permit an expert witness to testify "in the form of an opinion" if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."   Fed. R. Evid. 702.   Here, the defense has made no attempt to demonstrate how Dr. Durlauf's testimony would satisfy the requirements of FRE 702.

## CONCLUSION

Accordingly, for the reasons stated herein, the Government respectfully requests the Court to restrict the defense from commenting during opening statements regarding the testimony of Dr. Marc Sageman, Dr. Mohammad Fadel, Dr. Brian Glyn Williams, Dr. Gregory Johnson, Dr. Ebrahim Moosa, Dr. Andrew March, and Dr. Steven Durlauf until the defense has complied with the Federal Rules of Procedure and a determination has been made regarding the admissibility of their testimony.

Respectfully submitted,
CARMEN M. ORTIZ
United States Attorney


Aloke S. Chakravarty
Jeffrey Auerhahn
Assistant U.S. Attorneys

19

By: /s/ Jeffrey D. Groharing

Jeffrey D. Groharing
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice

Date:   October 12, 2011

## CERTIFICATE OF SERVICE

I hereby certify that I have discussed this matter with counsel, and this document, filed

through the ECF system, will be sent electronically to the registered participants as identified on

the Notice of Electronic Filing (NEF).

/s/ Jeffrey D. Groharing
Jeffrey D. Groharing
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice