UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                               )
UNITED STATES OF AMERICA )
                               )
V.                             )         NO.  09-CR-10017-GAO
                               )
TAREK MEHANNA            )
_____)

## DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO DETERMINE THE SCOPE OF DEFENSE EXPERTS' TESTIMONY AND CONDUCT A DAUBERT HEARING

The defendant, Tarek Mehanna, strenuously opposes the government's motion in limine to determine the scope of defense expert's testimony and conduct a Daubert hearing on the defense experts.  The government filed its motion on October 24, 2011.  We write this opposition quickly, mindful of the fact that the court has to rule on this motion before Thursday.

Our opposition to the government's motion is simple – the government is asking this court to prevent us from defending Mr. Mehanna.  The government has maintained from the beginning that the case is entirely about intent.  The way the government plans to prove that intent is by admitting over 900 trial exhibits extracted from Mr. Mehanna's hard drive, from his room, and from wiretaps. The government has conceded time and time again that Mr.

Mehanna did not do anything.  The government concedes that Mr. Mehanna did not commit any terrorist act, that he did not actually attend any terrorist training camp, and that he did not even plan any sort of terrorist act.  The government deposits a series of provocative questions in the jurors' minds about what Mr. Mehanna intended to do. Did he intend to conspire to commit a terrorist act by watching speeches by Osama Bin Ladin, by watching "jihadi videos," by viewing news photos of war atrocities in Iraq, by meeting with other young Muslim men at Papa Gino's to talk about religion or by traveling to a country?

It is entirely appropriate for Mr. Mehanna to present a defense to explain how completely incorrect the government is in linking certain facts to certain conclusions.  That is exactly what expert testimony is for – to assist the fact-finder.  The government's own exhibits require expert testimony.  There are numerous exhibits in Arabic that cover obtuse Islamic theology.  There are videos about Chechnya and Afghanistan, with Arabic chanting in the background.  The Instant Message and email conversations all talk about jihad as a religious principle.  A jury simply cannot understand what all of this means in any meaningful and objective sense without expert assistance.  We, as the defense team, could not have

prepared this defense without expert assistance because this religion and this language are completely new to us.

Defending this case without this specific, tailored, and contextual expert analysis would be outright ineffective assistance of counsel.  No jury can rationally and fairly judge Mr. Mehanna's culpability of these offenses when the government's evidence is literally foreign to them.  That the government would seek to exclude or limit this testimony is ludicrous when it was the government who cast the conspiracy length, scope, number of individuals, and geographic range so widely.

Given our abbreviated response time, we submit to the court that the government's motion is meritless for a number of reasons.  First, the government disingenuously represents that it elected not to use Mr. Vidino in its case-in-chief.  Defense counsel is aware that Mr. Vidino himself elected not to testify because he did not support the government's conclusions.  We consider this <u>Brady</u> material that the government should have disclosed to us but that we learned on our own.

Second, the government's expectations of expert disclosure are not reasonable and far exceed what judges in a number of jurisdictions have required.  We have attached under seal several disclosures in other terrorism

prosecutions.  The court was satisfied with far less than what defense counsel here even initially disclosed.  Our disclosure has been far and away more thorough than what many other courts have accepted.  There is no requirement that we tender a virtual transcript of everything our experts will say to the government.

Third, every one of our experts provides highly relevant contextual information in a case that is as technical as a patent case would be.  As we stated above, a jury simply would not be able to evaluate the government's exhibits in a fair and unbiased way without expert assistance.

Fourth, it is ironic that the government should challenge Dr. Sageman under Daubert when their own experts rely on his studies and findings in their own writings. Daubert envisioned allowed witnesses like Dr. Sageman to be the only types of social scientists who could testify. Evan Kohlmann is unfortunately Dr. Sageman's foil in terms of his academic rigor and adoption of proper scientific methodology.  Mr. Kohlmann concludes that Mr. Mehanna "furthered the objectives of al-Qaeda and related terrorist organizations, how they were responsive to such call for support and the needs of these entities, and that they are integral to the longevity of these activities and their

related movements."  The defense is fully entitled to rebut each of these conclusions with Dr. Sageman's testimony about the "social blob."  The government argues that Mr. Mehanna was part of the "media wing" of Al-Qaeda.  Mr. Sageman's social blob theory is directly relevant to this assertion.  Additionally, this is important testimony about independent advocacy, under the Holder decision.

Fifth, Dr. Fadel has to explain who people like Bin Baz, Muqbil, and Zarqawi are.  This is because the government relies on these and dozens of other scholars to show Mr. Mehanna's alleged criminal intent.  Also, Dr. Fadel is completely proficient in Arabic language and has been a teacher of Arabic for years.  The government need only look at his CV for the proof they are looking for. All of the exact descriptions of his qualifications are already in the government's possession.

Sixth, as to Dr. March's and Dr. Fadel's testimonies, if the government believes that possession of material is not relevant to this case, the defense would happily concede to this fact.  Every piece of hard drive, video, email, instant message, and physical evidence from Mr. Mehanna's bedroom can then be properly excluded.  Unless the government agrees to this stipulation, the defense has the right to explain this material just as the government

5

uses it to accuse Mr. Mehanna of conspiracy.

Seventh, Mr. Williams does not need to be an adolescent psychologist to talk about the popularity and availability of jihadi videos.  The government itself uses Mr. Williams extensively as a consultant on terrorism. Surely they can agree that his is well-qualified to testify about the very things he presents to law enforcement around the world.

Eighth, Mr. Johnsen's testimony is critical to our defense, and the government senses how foolish their allegations about Yemen are in the face of Mr. Johnsen's factual assertions.  Whether there were actually training camps in Yemen is highly probative of his intent in making the trip.  If Mr. Mehanna had gone to Paris rather than Yemen in February 2004, the government probably would not have indicted him.  It is because Yemen is both exotic and fairly mysterious to the average juror that the government can just assert that people "must" go to Yemen for terrorist training.  Mr. Johnsen sets the record straight that Mr. Mehanna was no more likely to find a terrorist training camp in Yemen as he was in Paris, and this fact was widely publicized in the media.  There is no question that this is highly relevant to intent to commit any conspiracy to kill or provide material support.  It is not

about factual impossibility – it is about what Mr. Mehanna knew was available to him on that journey.  Religious and linguistic education was available to him, and he knew that.  Terrorist training was not available to him, and he has the right to argue that he knew that too.

Ninth, the government itself conflates the terms "Salafi" and "jihadi."  Mr. Mehanna was and is a Salafi, and every Muslim is a jihadi as jihad is a part of Islam.  Again, a jury or even the attorneys would not know that without expert testimony.

Finally, the defendant does not intend to mention Dr. Durlauf during his opening.

**CONCLUSION**

Therefore, this court should deny the government's motion in its entirety.

                    TAREK MEHANNA
                    By his attorneys,

                    CARNEY & BASSIL

                    /s/ J. W. Carney, Jr.
                    J. W. Carney, Jr.
                    B.B.O. # 074760

                    /s/ Janice Bassil
                    Janice Bassil
                    B.B.O. # 033100

Sejal H. Patel
B.B.O. # 662259
Steven R. Morrison
B.B.O. # 669533
John E. Oh
B.B.O. # 675916
Carney & Bassil
20 Park Plaza, Suite 1405
Boston, MA 02116
617-338-5566

Dated: October 25, 2011

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

/S/J. W. Carney, Jr.
J. W. Carney, Jr.